UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MAURO KIMBALL *a.k.a* MARY SARAH KIMBALL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:21-cv-01548-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 14). |

This matter is before the Court on Plaintiff Mary Sarah Kimball's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income.[1] The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c)(1) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

---

[1] The Court will use Plaintiff's preferred name and pronouns.

1

Plaintiff argues that: (1) "The ALJ erred by finding the opinion from Dr. Ricci 'persuasive' yet failing to incorporate all the limitations in Plaintiff's RFC"; and (2) "The ALJ erred in finding that Plaintiff had moderate limitations in all four domains of the B Criteria but failing to incorporate those limitations in Plaintiff's RFC." (ECF No. 14, p. 1).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I.   ANALYSIS

### A.  Medical Opinion of Dr. Ricci

Plaintiff argues that the ALJ's decision to partially discount the opinion of consultative examiner, Christopher Ricci, Ph.D., was not supported by substantial evidence because the ALJ failed to adequately address the supportability and consistency factors when evaluating the persuasiveness of Dr. Ricci's opinion. (ECF No. 14, p. 6). Specifically, although the ALJ found Dr. Ricci's opinion to be persuasive regarding the severity of Plaintiff's mental impairments, the ALJ discounted Dr. Ricci's opinion regarding the degree of limitation caused by those impairments when determining Plaintiff's residual functional capacity. (Id. at 4-5). Plaintiff argues that instead of addressing supportability and consistency as required, the ALJ rejected Dr. Ricci's opinion on legally insufficient grounds. (Id. at 6). First, the ALJ failed to develop the record further regarding the degree of Plaintiff's limitations after finding Dr. Ricci's description of Plaintiff's limitations to be deficient. (Id.). Second, the ALJ impermissibly rendered her own medical opinion of Plaintiff's limitations without "relying upon Dr. Ricci or any medical provider." (Id. at 6-7). Finally, the ALJ relied on selective treatment notes to support a less limited residual functional capacity. (Id. at 7).

Because Plaintiff applied for benefits in September 2018 (A.R. 58), certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and

2

"how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . .  how persuasive' it finds 'all of the medical opinions' from each doctor or other source. . .and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). As provided by the regulations,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.

*Id.* at 791-92 (internal citations omitted).

Keeping these standards in mind, the Court now considers whether the ALJ provided legally sufficient reasons to discount Dr. Ricci's opinion regarding the degree of limitation caused by Plaintiff's impairments.

Dr. Ricci performed a consultative psychological evaluation of Plaintiff in May 2019. (A.R. 412). Dr. Ricci's evaluation covered Plaintiff's medical history as well as Plaintiff's daily activities and functioning, mental status, and cognition. (Id. at 412-414). Dr. Ricci's evaluation of Plaintiff's cognitive abilities states that Plaintiff's "[r]ecent and remote memory skills appeared intact" and that her "[c]ognitive function appeared in the below average to average range." Regarding Plaintiff's vocational functional capacities, Dr. Ricci's opinion concluded that Plaintiff "appears capable of following and understanding some simple directions and instructions performing simple tasks after supervision and training." (Id. at 414). Dr. Ricci further opined that,

> [She] appears capable of maintaining basic attention and concentration but may have difficulty maintaining a regular schedule. [She] appears likely in need of significant training and supervision when attempting complex tasks. [She] appears capable of making appropriate decisions. [She] may have difficulty relating adequately with coworkers and supervisors as well as difficulty dealing with stress

of daily work activities.

(Id.) Dr. Ricci's opinion recommended that Plaintiff be referred to "individual psychological therapy, for a psychiatric intervention, medical evaluation, and vocational training." (Id.)

After reviewing all record evidence, including Dr. Ricci's opinion, the ALJ identified the following non-exertional limitations in Plaintiff's residual functional capacity: "[s]he is limited to simple tasks, non-public, and no production quotas." (A.R. 19). The ALJ specifically addressed Dr. Ricci's opinion as follows:

> [I]n May of 2019, the claimant was evaluated by a second psychological consultative examiner, Christopher M. Ricci, Ph.D. (Ex. 4F). The claimant complained of major depression, posttraumatic stress disorder and gender dysphoria (Ex. 4F/1). She reported two psychiatric hospitalizations in January of 2019 (id.). She indicated she moved to North Carolina in March of 2019 and had not received outpatient mental health treatment since 2018 (id.). The findings from the mental status examination were generally unremarkable and included an apathetic affect (Ex. 4F/2-3).

> The impression was gender dysphoria, persistent depressive disorder with anxious distress, and borderline personality disorder (Ex. 4F/3). Dr. Ricci opined the claimant "may" have difficulty maintaining a regular schedule; appeared likely in need of significant training and supervision when attempting complex tasks; and "may" have difficulty relating adequately with coworkers and supervisors as well as difficulty dealing with stress of daily work activities (id.).

(A.R. 21).

> In determining the claimant's residual functional capacity, the opinion of the consultative examiner, Dr. Ricci, is persuasive in that he finds the mental impairments are severe (Ex. 4F). However, Dr. Ricci used vague and imprecise terms to attempt to describe the degree of limitation and did not precisely quantify the degree of the limitations. Therefore, I assessed specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole. The records documented years of ongoing psychiatric symptomatology that waxed and waned during the period of adjudication. However, the more recent records documented stable psychiatric symptoms (see Ex. 8F/4, 10, 13).

(A.R. 22).

The ALJ's first reason—that Dr. Ricci used vague and imprecise terms to describe the limitations—is supported by the record. Indeed, Dr. Ricci's opinion indicates the possibility of work-related difficulties, but also suggests that Plaintiff is apparently capable of exhibiting important work-related skills. Regarding Plaintiff's limitations, Dr. Ricci's opinion states that Plaintiff "may have difficulty" maintaining a regular schedule, relating to coworkers and

supervisors, and dealing with daily work stress. (A.R. 414). Dr. Ricci's description of Plaintiff's limitations not only lacks certainty but is interspersed with descriptions of Plaintiff's apparent capabilities such as "maintaining basic attention and concentration" and "making appropriate decisions." (Id.) Further, Dr. Ricci states that Plaintiff "appears likely in need of significant training and supervision when attempting complex tasks" but also that she "appears capable of following and understanding some simple directions and instructions performing simple tasks after supervision and training." (Id.) For these reasons, the Court finds that the ALJ's decision to discount Dr. Ricci's opinion on that basis was well-supported by the record. *See Ramirez v. Comm'r of Soc. Sec. Admin.*, 2022 WL 3443677 at *7, (D. Ariz. Aug. 17, 2022) (ALJ addressed supportability of medical opinion by noting the provider relied on ill-defined and vague terms to describe the degree of Plaintiff's mental limitations).

Given the fact that Dr. Ricci's limitations were imprecise, the ALJ considered the objective evidence of record to assess specific restrictions on a function-by-function basis. (A.R. 22). The ALJ found that the overall record demonstrated that Plaintiff's symptomology "waxed and waned" and the most recent records "documented stable psychiatric symptoms." (Id.) As support for this assertion, the ALJ cited to Dr. Ziyar's treatment notes from follow-up visits in June, August and September 2020. (A.R. 472, 478, and 481). According to Dr. Ziyar's treatment notes, Plaintiff reported that she was "doing very well," "sleeping well," and that her "mood is more stable." (Id.) Plaintiff also reported to Dr. Ziyar that she was "sleeping well" and was "cooperative and polite." (Id.) Elsewhere in the opinion, the ALJ noted that Plaintiff "reported doubling her medication dose due to feeling a little down" during her December 2020 follow-up visit with Dr. Ziyar. (A.R. 22). The ALJ discussed Dr. Ziyar's notes and determined those records "documented limited and conservative mental health treatment" and "stable psychiatric symptoms and similar [unremarkable] findings on the mental status examinations." (Id.) This reasoning invokes the consistency factor, which considers whether a medical opinion is consistent with other evidence from medical and nonmedical sources. *See Woods*, 32 F.4th 785 at 793, n.4 (ALJ addressed consistency factor by noting that medical opinion regarding Plaintiff's cognitive limitations was not supported by the objective medical evidence on record).

//

Further, the ALJ also discussed Plaintiff's statements concerning the limiting effects caused by her symptoms. (A.R. 20). Based on Plaintiff's descriptions of her everyday activities, the ALJ found that Plaintiff "engaged in a somewhat normal level of daily activity and interaction," that replicated the physical and mental capabilities required to obtain and maintain employment. (Id.) An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999) (ALJ did not err by rejecting medical opinion that claimant suffered marked limitations in part on basis that claimant's reported daily activities contradicted that conclusion). This reasoning also goes to the consistency factor, as the ALJ compared Plaintiff's testimony (a nonmedical source), with the medical opinion of Dr. Ricci and the other medical evidence on record.

Plaintiff argues the ALJ failed to develop the record after finding that Dr. Ricci's opinion lacked quantifiable information regarding Plaintiff's limitations. However, the ALJ was under no duty to do so in this case as the ALJ had access to medical records dating back several years and multiple consultative opinions. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding further development unnecessary when the available record included years of mental health records and multiple opinions from non-examining medical providers).

Additionally, Plaintiff argues that the ALJ failed to rely on any single medical provider when determining Plaintiff's residual functional capacity, and instead, rendered her own medical opinion. Here, the ALJ did rely on the opinion and treatment notes of several medical providers when determining Plaintiff's residual functional capacity. (*See* A.R. 21-22). The ALJ is not required to adopt a single medical opinion, but can resolve conflicts in evidence to render an opinion on Plaintiff's limitations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

Further, Plaintiff asserts that the ALJ "cherry-picked" the medical evidence of record to support a less limiting functional capacity. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context) (internal citation omitted). However, as discussed above, the ALJ adequately explained why the totality of objective evidence of record did not support a more limited residual functional capacity. Accordingly, the Court does not find that the ALJ "cherry-picked" the record to find inconsistencies.

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's treatment of Dr. Ricci's opinion was legally sufficient.

**B. Assessment of Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ failed to incorporate Plaintiff's limitations in assessing Plaintiff's residual functional capacity after the ALJ determined at step two that Plaintiff had moderate limitations in the four essential domains: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (ECF No. 14, p. 7-8). According to Plaintiff, the RFC assessment, which limits Plaintiff to "simple tasks, non-public, and no production quotas," does not address Plaintiff's "moderate deficits in concentration and persistence," "moderate deficits in emotional regulation and in responding to work-place stress," and limited ability to "interact with co-workers and supervisors." (Id. at 8-9).

The ALJ identified the following limitations when determining the severity of Plaintiff's impairments pursuant to step two analysis:

> In understanding, remembering or applying information, the claimant has a moderate limitation. A moderate limitation in this area is supported by the totality of the evidence, which documented a long history of psychiatric symptomatology that waxes and wanes. Moreover, the records documented ongoing difficulties with motivation and energy, which would negatively affect the ability to apply information (see Ex. 6F/1, 6, 11, 15, 16).
> In interacting with others, the claimant has a moderate limitation. The records documented ongoing interpersonal difficulties and problems with anger (see Ex. 6F).
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. While the consultative examiners documented minimal

difficulties with respect to concentration, the records documented ongoing complaints of decreased motivation and energy (see Ex. 3F, Ex. 4F, and Ex. 6F/1, 6, 11, 15, 16).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The records documented findings supporting a moderate limitation in this area. Specifically, the records documented difficulties maintaining personal hygiene and attire appropriate to a work setting. At the hearing, the claimant testified he had problems maintaining personal hygiene. In addition, the consultative examiner noted the claimant emitted a strong body odor (Ex. 3F/3).

(A.R. 18-19). The ALJ then went on to assess Plaintiff with an RFC to perform a full range of work at all exertional levels limited to simple non-public tasks without production quotas. (A.R. 19).

Plaintiff argues that the non-exertional limitations identified by the ALJ failed to incorporate the ALJ's own findings that Plaintiff had moderate limitations in the "paragraph B criteria" (understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; adapting or managing oneself). (ECF No. 14, p. 7). Specifically, Plaintiff argues that a limitation to simple tasks only accommodated Plaintiff's moderate limitations in pace, but not concentration or persistence. (Id. at 9). Further, the ALJ's RFC assessment failed to incorporate Plaintiff's moderate limitations to adapt and manage herself. (Id.) Finally, the ALJ's assessment that Plaintiff should be limited to non-public work failed to capture Plaintiff's moderate limitation in interacting with others including co-workers and supervisors. (Id.)

An ALJ must consider the limiting effects of both severe and non-severe medically determinable impairments when determining the RCF. *See* 20 C.F.R. § 404.1545(a) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . . when we assess your residual functional capacity."); 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). However, an ALJ's assessment of a claimant's limitations under the "paragraph B" criteria is not identical to the RFC assessment, which require a more detailed analysis:

> While similar evidence may be used in both assessments of Plaintiff's mental impairments, they are distinct, and limitations assessed in the context of the paragraph B assessment are not necessarily transferable to the more detailed assessment required when formulating the RFC. The ALJ's task when assessing the RFC is not to provide an adequate explanation for how the RFC accommodates the ALJ's paragraph B findings, but rather to perform a new, more detailed assessment incorporating *all* the relevant evidence.

*JW U.C. v. Comm'r of Soc. Sec.*, 2019 WL 3451515, at *2 (W.D. Wash. July 31, 2019) (citing *Israel v. Astrue*, 494 F.App'x 794 (9th Cir. 2012)). "[T]he question is not whether the ALJ's paragraph B findings are consistent with the RFC but whether the ALJ performed an adequate explanation for the mental limitations contained in the RFC." *Id.* Specifically, the Ninth Circuit has emphasized that the relevant inquiry into an ALJ's translation of the moderate limitations found in paragraph B to a functional limitation in the RFC is whether the RFC limitations are supported by medical evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with restrictions identified in the medical testimony.").

The ALJ provided a legally adequate explanation of Plaintiff's mental impairments in the RFC analysis. The ALJ considered the opinion of consultative examiner, Dr. Sanchez, which the ALJ found persuasive. (A.R. 22). Dr. Sanchez's functional assessment concluded that Plaintiff was mildly impaired in her "[a]bility to understand, remember, and carry out simple one or two-step job instructions." (A.R. 411). Further, Plaintiff was moderately impaired the following areas:

> Ability to do detailed and complex instructions . . . ability to relate and interact with co-workers and public. . . ability to maintain concentration and attention, persistence and pace . . . ability to associate with day-to-day work activity, including attendance and safety . . . ability to accept instructions from supervisors . . . ability to maintain regular attendance in the work place and perform work activities on a consistent basis . . . ability to perform wok activities without special or additional supervision.

(Id.) However, the ALJ noted that "the claimant's presentation two years prior to the application date has limited bearing on any limitations existing since September of 2018." (A.R. 22). Additionally, the ALJ found Dr. Ricci's opinion persuasive regarding the severity of Plaintiff's mental impairments. (Id.) Dr. Ricci's opinion states that Plaintiff's "[r]ecent and remote memory skills appeared intact" and that Plaintiff's "[a]ttention and concentration appeared intact." (A.R.

414). Dr. Ricci concluded that Plaintiff appeared capable of "following and understanding some simple directions and instructions performing simple tasks after supervisions and training," "maintaining basic attention and concentration," and "making appropriate decisions." (Id.).

Further, in the RFC assessment, the ALJ cited to records that documented Plaintiff's history of "poor attention and concentration, forgetfulness and mental confusion" and "decreased appetite, energy, and motivation" (A.R. 21). As described in the ALJ's "paragraph B" analysis, "ongoing complaints of decreased motivation and energy" indicate moderate limitations in concentrating, persisting, or maintaining pace. (Id. at 18). Accordingly, Plaintiff's moderate mental limitation in this area is adequately addressed by the ALJ's RFC assessment limiting Plaintiff to simple tasks with no production quotas. *See Stubbs-Danielson*, 539 F.3d at 1174 (claimant's limitations in concentration, persistence, and pace translated to an RFC of "simple tasks" in accordance with the medical evidence); *see Kimberly A. v. Kijakazi*, 2022 WL 19203, at *6 (D. Ore. Jan. 3, 2022) (moderate limitations in concentration, persistence, and pace adequately addressed by a limitation to non-production quota type work).

Plaintiff also argues the ALJ's assessment of Plaintiff's RFC failed "to address Plaintiff's moderate deficits in emotional regulation and in responding to work-place stress" with respect to adapting or managing herself. (ECF No. 14, p. 9). However, the ALJ's assessment addressed Plaintiff's abilities to care for her own personal needs as well as medical treatment notes that demonstrated Plaintiff's consistent stable mood and cooperative and polite demeanor. (A.R. 24, 26). Thus, Plaintiff's moderate mental limitation in adapting and managing herself is adequately addressed by the RFC's functional limitations to simple tasks. *See Garza v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2974691, at * 12 (E.D. Cal. Jul. 27, 2022) (claimant's moderate limitations in adapting or managing incorporated by functional limitation to simple, routine tasks).

Finally, Plaintiff argues the RFC assessment fails to incorporate Plaintiff's "ability to interact with co-workers and supervisors." (ECF No. 14, p. 9). Here, the ALJ noted the record describes Plaintiff as demonstrating an improved mood with "broad and appropriate affect" (A.R. 22). The ALJ also found the record demonstrated that Plaintiff had the capacity to perform daily activities that require some amount of social interaction, such as grocery shopping, "which replicate those necessary for obtaining and maintaining employment." (Id. at 20). The ALJ's

opinion also states that the records "documented ongoing interpersonal difficulties and problems with anger" as well as "difficulties maintaining personal hygiene and attire appropriate to a work setting." (Id. at 18). Further, while Plaintiff testified that she "had a hard time being around others" and "had anger issues," the ALJ noted that recent treatment notes documented "stable psychiatric symptoms" and "unremarkable" mental status examinations. (Id. at 19, 22). This evidence supports the ALJ's limitation of Plaintiff to non-public work. Accordingly, the ALJ's assessment of Plaintiff's RFC adequately accounted for Plaintiff's mental limitations in her ability to interact with others.

The Court concludes that substantial evidence supports the ALJ's assessment of Plaintiff's RFC.

## II.      CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of Social Security is hereby affirmed. The Clerk of the Court is respectfully directed to close this case.

IT IS SO ORDERED.

Dated:   **November 29, 2022**          /s/ _Erica P. Grosjean_
                                         UNITED STATES MAGISTRATE JUDGE

11